Argued and submitted May 12, reversed and remanded August 19, 2015

In the Matter of the Marriage of

Kolette M. HOOGENDAM,
*Petitioner-Appellant,*
*and*

Shane M. HOOGENDAM,
*Respondent-Respondent.*

Washington County Circuit Court
C114447DRA; A155813

359 P3d 376

Margaret H. Leek Leiberan argued the cause for appellant. With her on the briefs was Jensen & Leiberan.

Brent J. Goodfellow and Johnstone & Goodfellow filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Wife appeals a judgment entitled "Stipulated General Judgment of Dissolution of Marriage," arguing that the court erred by entering that judgment because it was not signed or agreed to by both parties and it incorporated documents that included terms not agreed upon by the parties on the record.[1] We agree with wife and, accordingly, we reverse and remand.

The relevant facts are undisputed. Husband and wife were married in August 1996 and separated in November 2011, and dissolution proceedings were initiated on November 30, 2011. The parties had one child, who was four years old at the time of the separation.

At a hearing on November 15, 2012, the trial court stated, "It's my understanding that we're going to put a settlement on the record." Husband and wife then agreed, on the record, to terms relating to their dissolution, including, as relevant to the issues on appeal, terms relating to custody and parenting time, child support, and property division.

Regarding custody and parenting time, the parties agreed that wife would have "primary sole legal and physical custody of [the child], subject to [husband's] parenting time," and that, with a few specified exceptions for upcoming dates in 2013, husband's parenting time would be "as recommended in the custody evaluation that was conducted by JMJ Psychological Services [JMJ]." On July 26, 2012, JMJ had offered recommendations for a parenting plan that provided, in part, "[Husband] shall have parenting time with [the child] from Thursday after school until Monday morning before school resumes every other week. On the

---

[1] Generally, a party may not appeal a stipulated judgment unless that judgment "specifically provides that the party has reserved the right to appellate review of a ruling of the trial court," ORS 19.245(3)(a), and, in this case, the stipulated judgment does not reserve such a right. However, the validity of a stipulated judgment can be challenged on appeal on the ground that the party did not consent to it. *Brown and Shiban*, 155 Or App 238, 241-43, 963 P2d 105 (1998), *rev den*, 328 Or 594 (1999); *see also Dept. of Human Services v. K. L. W.*, 253 Or App 219, 227 n 3, 288 P3d 1030 (2012), *rev dismissed*, 354 Or 62, 308 P3d 206 (2013) (stating same regarding a stipulated judgment terminating the father's parental rights).

alternate weeks when [husband] doesn't have weekend parenting time, he shall have parenting time with [the child] from Wednesday after school until Thursday morning before school resumes." Thus, the proposed parenting plan provided for husband to have approximately 36 percent of overnight parenting time and for wife to have approximately 64 percent of overnight parenting time.

Regarding child support, the parties agreed on a method of determining each parent's income, and agreed that the court would then use the resulting figures to calculate child support based on the child support guidelines. For purposes of the child support guidelines, the parties agreed that the figure to be used for the number of "overnights" with each parent would be "based on JMJ's schedule." The parties further agreed that husband would provide health insurance for the child.

Regarding the property division, wife's attorney began by stating that "in terms of the proposed distribution of assets and liabilities here, we have a very battle-worn copy of a proposed distribution from [husband], which [wife] has marked up. It represents the parties' agreement. There are some very specific details that have been thoroughly worked out." Wife's attorney further explained:

> "[A]s a generality, each party keeps their primary vehicle. [Wife] keeps the house. [Wife] takes responsibility for the mortgage on the house. Then the parties attempt to equalize from there, using the proposed assets and liabilities distribution. And to the extent that there's still a resulting disparity at the end of that, it will just—I think [husband's] intention is to equalize that out with 401(K). The arithmetic needs to still be clarified based on all the adjustments we've made today, but that's our understanding of what we're doing."

Husband's attorney agreed, stating, "Yes, Your Honor, that's correct, from [husband's] perspective." Husband's attorney later added, "I think that that asset sheet will eventually become an exhibit to the judgment. And I think the JMJ Psychological Services custody evaluation should be made an exhibit to the judgment for clarification purposes moving forward with these parties."

After the hearing, the parties failed to agree as to the form of the resulting judgment. First, wife submitted a proposed form of judgment, to which husband objected.[2] Husband later submitted his own proposed judgment to the court, in which he included a revised custody and parenting time evaluation report from JMJ, dated March 19, 2013, and an edited version of the assets and liabilities distribution sheet.

The revised JMJ report began:

"It has come to these evaluators['] attention that the court judgment has given [mother] primary custody of [the child], with restrictions. The custodial evaluation, dated July 26, 2012, determined that it would be in the best interest for this family that there would be 50/50 parenting time to which the court ordered.

"The question that has come to these evaluators is that the parenting time is not 50/50 with the current schedule. Rather[, husband] is getting * * * 36% parenting time."

The report further provided, "It is highly recommended that based on [the child's] developmental abilities, a week on week off [schedule] would reflect the true 50/50 parenting-time split originally recommended, and would be more reliable, consistent and easier to follow for these parents." Based on that revised custody and parenting time report, husband's proposed form of judgment included a child support calculation based on the presumption that husband and wife would share equal parenting time.

The edited version of the assets and liabilities distribution sheet appears to be the result of husband's attempt to incorporate wife's annotations into the distribution list that he had originally proposed. On the "battle-worn copy" of the sheet, husband had proposed values and distributions of the parties' various items of property and liability, and wife had made handwritten annotations next to the items for which she proposed a different value or distribution. On husband's edited version, wife's handwritten annotations have been removed and many of the values and distributions originally

_____

[2] Wife's proposed form of judgment and husband's objections to that proposed form of judgment are not part of the record on appeal.

proposed by husband have been changed. It is unclear from the record to what extent the edited version accurately reflects the actual agreement between the parties.

Wife submitted objections to husband's proposed form of judgment to the trial court, arguing, among other points, that the judgment "makes a material departure from [the] stipulated parenting time plan for purposes of calculating child support" and "proposes a property schedule that is a material deviation from the parties' stipulation placed on the record."

On November 13, 2013, the trial court judge signed and entered husband's proposed form of judgment.[3] As noted, the judgment, in its final form, was titled "Stipulated General Judgment of Dissolution of Marriage." Next to the judge's signature is stamped the phrase "Objections received and considered"; other than that stamped phrase, the record contains no information related to the trial court's consideration and rejection of wife's objections.

Among the trial court's findings in the judgment, the court noted:

> "Husband and Wife acknowledge that the disposition of property herein, whether or not equal, is just and proper in all the circumstances. *The parties each warrant to the other and to this court that each has signed this judgment on their own volition* and that there has been an accurate, complete, and current disclosure of all their income, assets, debts, and liabilities. The terms of this judgment represent a compromise of disputed issues in some instances. In addition, each party acknowledges that there have been no representations or promises of any kind that have been made to him or her as an inducement to enter into the agreement represented by this judgment other than those expressly set forth here."

(Emphasis added.) The judgment also provided that "Husband and Wife's signatures on this stipulated judgment evidence their intent that the agreement embodied in this stipulated judgment will be enforceable in the manner described in

---

[3] In his brief, husband refers to "minor corrections" that the court made to the judgment before signing it, but he does not identify, and we cannot determine from the record, what those changes were.

ORS 107.135." Although there are spaces for husband's and wife's signatures, neither party signed the judgment.[4]

Three provisions in the judgment are critical to our analysis. First, the court ordered that husband and wife would be awarded "[a]ll property [as] listed on Exhibit [3]"—the edited version of the assets and liabilities distribution sheet that husband submitted with his proposed form of judgment.[5] Second, the court ordered that "Husband shall be entitled to frequent, equal, shared, and unhampered parenting time visitation at such times as the parties may mutually agree, or if the parties do not agree, per the attached and incorporated parenting plan as set forth in the custody study performed by [JMJ]." Third, based on the presumption that husband and wife would share equal parenting time, the court ordered that "Husband will have judgment against Wife for the support of the minor child in the amount of $50.00 per month[.]"

Wife now appeals, arguing that the trial court erred as a matter of law by entering the judgment, because it was inconsistent with the agreement placed on the record by the parties and their attorneys in court, it was not signed by wife or her attorney, and the court was aware that, in fact, wife did not agree to all of the provisions therein.

In response, husband contends, without detailed explanation, that the terms of the judgment "do not differ substantially from the agreement that was put on the record." However, husband also appears to acknowledge that some of the terms incorporated into the judgment were not agreed upon by the parties, and he contends that the trial court, after considering the proposed judgments from both husband and wife, had "broad discretion" to enter the judgment anyway. Husband suggests that "the title, 'Stipulated General Judgment' may be incorrect," but the judgment should nonetheless be affirmed "with instruction for the

---

[4] Husband's attorney's name is listed on the judgment as having submitted it to the court, but neither wife nor wife's attorney signed the judgment at any point.

[5] The judgment mistakenly cites to "Exhibit 2," but the property division worksheet is actually labeled as "Exhibit 3."

court to strike [the term] 'stipulated' from the document."
(Some capitalization omitted.)

A court's authority to enter a judgment based on a stipulation of the parties is described in ORCP 67 F, which provides, in part:

"(1)  *** At any time after commencement of an action, a judgment may be given upon stipulation that a judgment for a specified amount or for a specific relief may be entered. The stipulation shall be of the party or parties against whom judgment is to be entered and the party or parties in whose favor judgment is to be entered. If the stipulation provides for attorney fees, costs, and disbursements, they may be entered as part of the judgment according to the stipulation.

"(2)  *** *The stipulation for judgment may be in a writing signed by the parties, their attorneys, or their authorized representatives,* which writing shall be filed in accordance with Rule 9. The stipulation may be subjoined or appended to, and part of, a proposed form of judgment. *If not in writing, the stipulation shall be assented to by all parties thereto in open court.*"

(Emphases added.) In other words, parties to an action may stipulate that a judgment for specified relief be entered by a court, either by creating "a writing signed by the parties, their attorneys, or their authorized representatives," or by assenting to the stipulation in open court. *Id.*

Regarding stipulated judgments in marital dissolution proceedings, ORS 107.104 provides, in part:

"(1)  It is the policy of this state:

"(a)  To encourage the settlement of suits for marital annulment, dissolution or separation; and

"(b)  For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.

"(2)  In a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment

resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:

"(a)    As contract terms using contract remedies;

"(b)    By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

"(c)    By any combination of the provisions of paragraphs (a) and (b) of this subsection."

As relevant to this case, on November 15, 2012, the parties agreed, on the record in open court, that (1) husband's parenting time would be "as recommended in the custody evaluation that was conducted by JMJ" (at that time, the only report from JMJ recommended a parenting schedule in which husband would have 36 percent parenting time); (2) child support would be calculated using the child support guidelines and, for purposes of the guidelines, the number of "overnights" with each parent would be "based on JMJ's schedule"; and (3) the "battle-worn copy" of the assets and liabilities distribution sheet "represents the parties' agreement" regarding the division of their property. However, instead of incorporating the original JMJ report and the "battle-worn copy" of the assets and liabilities distribution sheet referenced by the parties as part of their agreement, husband's proposed form of judgment incorporated a revised report from JMJ (which recommended a different parenting schedule in which husband would have 50 percent parenting time), presumed that the parties would share equal parenting time for purposes of child support, and incorporated an edited version of the "battle-worn copy" of the assets and liabilities distribution sheet. It is our understanding that it was because of those differences that wife objected to and refused to sign the proposed judgment. The court should not have entered a purported stipulated judgment knowing that wife had not actually stipulated to the terms contained therein.

Thus, we conclude that the court erred when it signed and entered a purported "Stipulated General Judgment of Dissolution of Marriage" that was not signed or agreed to by both parties and that incorporated documents

that included terms not agreed upon by the parties on the record.[6]

Reversed and remanded.

---

[6] We note that a court may enter "a judgment resulting from a settlement on the record," which is enforceable without the parties' signatures. ORS 107.104(2). However, it is impossible to tell from the record whether the trial court intended to exercise its discretion to enter a judgment based on its own understanding of the parties' agreement and, if so, the court's reasons for rejecting wife's objections. We therefore decline to consider that alternative possibility.